FILED
2017 Mar-02  AM 10:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **WENDY SMITH and ALTON RICHEY,** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **Case No.: 1:16-CV-0959-VEH** ) |
| **DOLGENCORP, LLC, d/b/a DOLLAR GENERAL and KIMIKO THOMAS, a/k/a KIM THOMAS,** | ) ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This Fair Labor Standards Act ("FLSA") lawsuit was initiated by Plaintiffs Wendy Smith ("Ms. Smith") and Alton Richey ("Mr. Richey") on June 9, 2016. (Doc. 1). Pending before the court is Defendant Dolgencorp, LLC's ("Dollar General") Motion To Sever Plaintiff Wendy Smith's Claims and Compel Arbitration (Doc. 15) (the "Motion") filed on February 10, 2017. The Motion seeks "an order severing [Ms.] Smith's claims, compelling arbitration of [Ms.] Smith's claims, and staying the judicial proceeding in favor of arbitration." (Doc. 15 at 2).

The Motion indicates within the case caption that it is opposed. However, the 14-day deadline for Ms. Smith to file her opposition under Appendix III of the court's

Uniform Initial Order (Doc. 2) ran on February 24, 2017, and nothing was ever filed. (*Id.* at 23). For the reasons explained below, the Motion is **GRANTED** and Ms. Smith's claims are **SEVERED** from this lawsuit and subject to arbitration as further explained below.

## II.    Standards

### A.    Ms. Smith's Failure To Oppose

Ms. Smith's failure to file any opposition to the Motion does not automatically mean that the Motion is due to be granted. As explained by Judge Steele in *Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, at *1 (S.D. Ala. Jan. 16, 2013), in the comparable situation of a non-movant's failure to oppose a motion to dismiss:

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden,

will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, at *1 (footnotes omitted).

### B.   Principles Governing Motions To Sever

Dollar General's Motion is brought pursuant to Rule 21 of the Federal Rules

of Civil Procedure. (Doc. 15 at 8). Rule 21 provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. <u>The court may also sever any claim against a party</u>.

FED. R. CIV. P. 21 (emphasis added).

Severance under Rule 21 is directly related to permissive joinder of parties

under Rule 20. As Rule 20 pertains to joining plaintiffs in particular:

> **(1)** *Plaintiffs.* Persons may join in one action as plaintiffs if:
>
> > **(A)** they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of <u>the same transaction, occurrence, or series of transactions or occurrences</u>; and
> >
> > **(B)** <u>any question of law or fact common</u> to all plaintiffs will arise in the action.

FED. R. CIV. P. 20(a)(1) (emphasis added).

A district court's decision to allow joinder or order severance is a discretionary

one. *See, e.g., Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5th Cir. 1973)

3

("The district judge acted <u>within his discretion</u> in allowing the joinder under Rule 20(a), as well as denying the motion for severance under Rule 20(b).") (emphasis added);[1] *see also Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1322 (11th Cir. 2000) ("We review a district court's joinder of Plaintiffs' claims and denial of severance for abuse of discretion.") (citing *Nor-Tex Agencies*), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 (11th Cir. 2003).

## III.   Ruling

Dollar General bases its severance request on the grounds that Ms. Smith's claims "are subject to a valid, enforceable arbitration agreement" while Mr. Richey's are not. (Doc. 15 at 8). Therefore, before the court reaches the issue of severance, it must first examine the underlying evidence and law relied upon by Dollar General to verify whether Ms. Smith's claims asserted in this lawsuit are subject to arbitration.

Attached to the Motion is a Dollar General Employee Arbitration Agreement (Doc. 15-1) (the "Agreement") which is dated March 24, 2015, and which is

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

electronically signed by Ms. Smith.[2] (Doc. 15-1 at 8).[3] The Agreement is expressly

governed by the Federal Arbitration Act (the "FAA") (Doc. 15-1 at 7) and states in

pertinent part:

> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement. . . .

> The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, <u>claims alleging violations of wage and hour laws</u>, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

(Doc. 15-1 at 6, 7 (emphasis added)).[4] Because Ms. Smith's two counts brought

___

[2]  The document reflects the name of Wendy Wyatt which Dollar General reports was the name of Ms. Smith when she signed the Agreement. (Doc. 15 at 3 n.1).

[3]  All page references to Doc. 15-1 correspond with the court's CM/ECF numbering system.

[4]  "Covered Claims do <u>not</u> include claims for unemployment benefits, workers' compensation benefits . . . , whistleblower claims under the Sarbanes-Oxley Act, and claims for benefits under the Employee Retirement Income Security Act. Covered claims also do not

against Dollar General are for violations of the FLSA overtime and minimum wage provisions (Doc. 1 at 6-8 ¶¶ 31-40), her claims fall within the scope of "Covered Claims" under the Agreement.

Whether the Agreement is enforceable is a mixed question of federal and state law. *See Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." (citing *Perry v. Thomas*, 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987))). Turning to considerations under the FAA first, the United States Supreme Court has explained:

> The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L.

---

include claims pending in court as of the date this Agreement is signed by you, and claims concerning the scope or enforceability of this Agreement." (Doc. 15-1 at 7).

Ed. 2d 158 (1985) (emphasis in original). Therefore, the FAA leaves very little room to challenge the validity of an arbitration agreement. *See, e.g., Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) ("The FAA thus 'embodies a liberal federal policy favoring arbitration agreements' and seeks 'to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation.'" (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotation marks omitted))).

Further, the Agreement is governed by the FAA pursuant to Alabama substantive standards. More specifically, "(1) there is a written agreement calling for arbitration, and (2) the contract in which the arbitration agreement appears relates to a transaction involving interstate commerce." (Doc. 15 at 6); *see also Prudential Sec., Inc. v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (same) (citing *Maxus, Inc. v. Sciacca*, 598 So. 2d 1376 (Ala. 1992)).

As demonstrated above, the writing prong has undoubtedly been met. Moreover, Ms. Smith's complaint confirms that the interstate commerce component is satisfied. (*See, e.g.*, Doc. 1 at 3 ¶ 12 ("Dollar General is an enterprise engaged in interstate commerce or in the production of goods for commerce for the purposes of the Fair Labor Standards Act . . . .")); (*id.* at 4 ¶ 21 ("The plaintiffs are employees

who were engaged in interstate commerce, engaged in the production of goods for commerce, and/or employed by an enterprise engaged in commerce or in the production of goods for commerce . . . .")).

Finally, no ground for revocation of the Agreement arising under Alabama law is readily apparent from the record.[5] Therefore, Ms. Smith's claims are subject to arbitration as mandated by the FAA.

Having found that the arbitration of Ms. Smith's FLSA claims is required, the court must now decide whether to sever this lawsuit. Dollar General's Motion lacks specific case authority showing that an order of severance is within this court's discretion under the arbitrable versus non-arbitrable circumstances presented here. At the same time, this court recognizes that the level of discretion afforded to it under Rule 21:

> [i]s so broad that courts have "virtually unfettered discretion in determining whether or not severance is appropriate." *Id.* (quoting *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (internal quotation marks omitted)). Whether severance would facilitate settlement or judicial economy is among the factors a court may examine while determining whether to sever the claims. *See id.* Additionally, a

---

[5]  The court notes that the Agreement precludes bringing FLSA claims "as a class, collective or representative action." (Doc. 15-1 at 6). In *Walthour*, the Eleventh Circuit found that these types of waiver provisions when applied to FLSA claims, were enforceable under the FAA. *See Walthour*, 745 F.3d at 1334 ("After examining the FLSA's text, legislative history, purposes, and these Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of plaintiffs' Arbitration Agreements and their collective action waivers.").

court may consider "the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic." *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996) (citation omitted).

*Tillis v. Cameron*, No. 1:07-CV-0078-WKW, 2007 WL 2806770, at *5 (M.D. Ala. Sept. 25, 2007) (emphasis added). Therefore, despite Dollar General's failure to fully develop this issue with any on-point case authority, the court concludes that a severance based upon judicial economy is warranted because of the widely diverging procedural tracks that Ms. Smith's claims will follow in arbitration versus those of Mr. Richey that will proceed in litigation before this court. *Cf. Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court."); *id.* ("Indeed, there is no reason why, in a proper case, we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues.").

## IV.    Conclusion

Accordingly, Dollar General Motion's is **GRANTED** and Ms. Smith's claims are **HEREBY SEVERED** from the claims of Mr. Richey. Mr. Richey will remain as the named plaintiff in this lawsuit (*i.e.*, 1:16-CV-0959-VEH). Further, the clerk is **HEREBY DIRECTED** to assign a new civil action case number to the severed claims of Ms. Smith and file in this order of severance as well as a copy of the

original complaint. The new case as well as this action shall both be assigned to the undersigned.

Further, Ms. Smith's severed lawsuit is **HEREBY STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration. Upon good cause shown by either side, the court will grant a motion to reinstate this lawsuit as an active case.

**DONE** and **ORDERED** this 2nd day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge